Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
Quentin A. Roberts (State Bar No. 306687)
Email: qroberts@zlk.com
**LEVI & KORSINSKY LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Attorneys for Individual and Representative Plaintiff Ronald Meyer*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RONALD MEYER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AABACO SMALL BUSINESS, LLC; and YAHOO! INC.,<br><br>Defendants. | Case No. 5:17-cv-2102<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ronald Meyer ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit against Defendants Aabaco Small Business, LLC and Yahoo! Inc. (respectively "Aabaco" and "Yahoo," collectively "Defendants").  In support of this Class Action Complaint, Plaintiff alleges, based on his personal knowledge and the investigation of his counsel, as follows:

## NATURE OF THE ACTION

1. This is a class action seeking monetary damages, restitution, injunctive, and declaratory relief from Defendants, arising from their failure to provide services to the customers who paid for them and for their failure to cancel the service according to the Terms of Service.

2. Yahoo is a technology company that offers online services to millions of people. Through its wholly-owned subsidiary, Aabaco, Yahoo offers a range of small business services, including providing storage space and access for websites and email addresses connected to those websites ("Web Hosting").

3. Customers pay monthly or annual fees to Defendants in order to receive Web Hosting.  Many of Defendants' customers are business owners who pay for Web Hosting with the goal of being able to create websites for their businesses, advertise for their businesses, and obtain emails addresses for their businesses.

4. Defendants' Terms of Service governs the relationship between Defendants and customers who pay for Web Hosting.  The general relationship is straightforward; money in exchange for services.  Unfortunately, however, many customers are paying Defendants for Web Hosting and are not receiving it.  When this is brought to Defendants' attention, nothing is done.  Moreover, many customers attempt to cancel the Web Hosting according to the Terms of Service but are unable to.

5. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure to redress Defendants' failure to provide Web Hosting to those who paid for it, and for Defendants' failure to cancel the Web Hosting in accordance with the Terms of Service.

6. Plaintiff alleges claims on behalf of himself and all others similarly situated for

violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.

## THE PARTIES

7. Plaintiff Ronald Meyer is a resident and citizen of Oxford, Michigan.

8. Plaintiff signed up for Defendants' Web Hosting, when it was still referred to as Yahoo Small Business, at some point between 1998 and 2000. He received and used the provided Web Hosting until October of 2016 when Defendants abruptly and without reason or notice stopped providing Plaintiff with the Web Hosting he was and continues to pay for. Plaintiff called and emailed Defendants multiple times, asking them to either reactivate his Web Hosting, or to cancel the Web Hosting altogether—neither were done.

9. Yahoo is a Delaware corporation with its principal place of business in Sunnyvale, California. This technology company is primarily built on its digital search platform, communication services, and digital content products. Yahoo also provides customers with services geared towards small business owners, through its wholly-owned and controlled subsidiary, Aabaco.

10. Aabaco shares the same headquarters and principal place of business as Yahoo in Sunnyvale, California. Aabaco is the legal entity through which Yahoo provides its services geared towards small business owners.

11. Because Aabaco is wholly-owned and controlled by Yahoo and shares the same principal place of business and corporate headquarters, both entities are jointly responsible for the acts complained of herein. Yahoo is liable for any wrongful acts carried out by Aabaco under a theory of *respondeat superior* and/or alter ego liability. Moreover, Aabaco is liable for any acts committed when the service was known as Yahoo Small Business as it is the successor in interest.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction of this Action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2), this Court has original jurisdiction

because (i) at least one member of the Class is a citizen of a different state than Defendants; (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs; and (iii) none of the exceptions under that subsection apply to this Action.

13. The Northern District of California has personal jurisdiction over Defendants because they conduct substantial business in this District and it is in this District where Defendants maintain their corporate headquarters, including where Defendants run, manage, and make decisions involved with the Web Hosting at issue. Additionally, this Court has personal jurisdiction over Defendants pursuant to the Choice of Law and Forum clause, specifically listing Santa Clara County, contained in Defendants' Terms of Service agreement entered into between them and all members of the Class.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District and because Defendants are headquartered in this District. It is also proper pursuant to the Choice of Law and Forum clause contained in Defendants' Terms of Service.

**APPLICATION OF CALIFORNIA LAW TO THE CLASS IS APPROPRIATE**

15. Application of California law to the claims of the Class is appropriate because Defendants maintain their headquarters in Sunnyvale, California.

16. Defendants also made corporate decisions from their California headquarters concerning the Web Hosting, including what is provided to paying customers and how the service is cancelled. Moreover, the Choice of Law and Forum provision in the Terms of Service explicitly states that California law governs any disputes arising from the Web Hosting.

**FACTUAL ALLEGATIONS**

17. Defendants offer Web Hosting for a monthly or annual fee, targeting small business owners. Specifically, through this service, Defendants provide website building tools and storage space, business emails attached to the website, and the ability to market or advertise through the website.

18. The Web Hosting benefits have been at the core of the service since the 1990s. Within the last several years, however, Defendants have, without reason or notice, cut off the

-3-
CLASS ACTION COMPLAINT; Case No. 5:17-cv-2102

Web Hosting benefits to their paying customers.  Additionally, Defendants have not honored the cancellation rights included in the Terms of Service.

### A. Plaintiff's Experience

19. Plaintiff starting paying for Defendants' Web Hosting at some point between 1998 and 2000 in order to utilize the service, specifically to have and maintain the following photography related website: www.naturesbeautyphotography.com.  In exchange for $9.95 a month, Defendants hosted Plaintiff's website and provided him with business email accounts tied to his website.  Within Plaintiff's photography website, he also had two separate URLs he paid for related to two children's books he wrote and illustrated—www.freddyfox.com and www.caseycougar.com.  These URLs were directed to his photography website.  People who would like to buy Plaintiff's children's books could email Plaintiff via the account tied to his photography website, and would be directed to his photography website.

20. In October 2016, Plaintiff noticed he was no longer receiving emails to his website's business email account.  Later Plaintiff determined that the functions of the Web Hosting he was paying for, including maintaining an accessible website, had been terminated without notice or reason.  As a result of this, potential buyers of his books could no longer visit his URLs or write to him through his business email addresses.

21. Once Plaintiff found out he was paying for services he was not receiving, he called Defendants' 800 number several times to try and get his website and email accounts reactivated.  Not a single customer service representative could help him in either reactivating his website and email accounts, or cancelling his service after returning his website and email content.

22. As of April 12, 2017, Plaintiff's website and email accounts remain inaccessible, yet Defendants continue to charge him the monthly fee for the Web Hosting.  Below is a screenshot of what appears when Plaintiff's URL is entered into a search engine.

/ / /

/ / /

> **This site can't be reached**
>
> naturesbeautyphotography.com's server DNS address could not be found.
>
> - Did you mean http://naturesbeautyphotography.biz/?
> - Search Google for nature's beauty photography
>
> ERR_NAME_NOT_RESOLVED
>
> Reload

**B.    Defendants' Representations Regarding Their Service are False and Misleading**

23.    Since Plaintiff began paying for the Web Hosting, Defendants have represented their service in the typical money-for-service arrangement. Specifically, the customer pays the specified amount at the specified time according to the current version of Defendants' Web Hosting offer, and Defendants provide the customer with the advertised benefits, including Web Hosting.

24.    Plaintiff and many of Defendants' other Web Hosting customers, however, have upheld their end of the bargain by paying Defendants, and yet have gone months or years without receiving the promised Web Hosting.

25.    Defendants' Terms of Service clearly provides how a customer cancels their Web Hosting. Specifically, the agreement states: "You may cancel Your Service and terminate this Agreement at any time. To cancel any Service, You must either sign in to Your account, go to the My Services tab, and follow the instructions, or contact us and speak to a live representative."

26.    If a customer's account is deactivated, he or she cannot log in to cancel it. But, the second option, calling a live representative, also does not work. Plaintiff and many others have reported requesting that their accounts be cancelled with a live customer service

representative with no success.  Thus, Defendants' representation regarding how to cancel the Web Hosting is also false and misleading.

### C. Plaintiff's Situation is Not Unique

27. A basic Internet search reveals there are a large number of Defendants' customers with the same problems as Plaintiff; either their Web Hosting was cancelled while they were still being charged, or they were simply unable to cancel their service.  Below is a *small* sample of relevant portions of publicly posted complaints found on the Internet[1]:

- Same BS. Locked me out of both my business websites. Call and get put on hold until you give up.

- I have had this website for over 20 years, I pay 12.95 a month, there are over 500 pages for my class, it is gone, I AM IN TEARS!!!!!! This website is part of my life with all of these children. I cannot access anything and to make matters worse, they have been charging me 12.95 for over a year and it is not even there…

- I tried to login this morning and don't have access to my business email. They are preventing me from conducting business. WOW – unbelievable.

- Do you have ANY idea… how I can retrieve the FILES/FOLDERS of my website listed?

- Being a long-time Yahoo customer, I thought that my service would continue when then changed to Aabaco Small Business. I WAS WRONG! Even though I was unable to log on since 2014, they continued to charge me anyway.

- Cancelled on the last day of my annual term, and they still charged me and won't refund. It is impossible to get a hold of them.

- Disabled my Business Email without even sending a courtesy notice.

- Trying to cancel domains I no longer need and they want 34.95 a year to renew. The system will not let me cancel, says I must call them, and has charged my credit card while I absolutely cannot contact them.

- This seems to be a common Yahoo problem, and I just had the same experience. Cancelled two sites, and one keeps showing up for renewal.

- Does anyone have a physical address we can MAIL account cancellations and requests for information? At least maybe we can get the legal process started. What a nightmare. On hold for 47 minutes so far and unable to access all of my domains. Will not let me drop this account.

---

[1] Complaints found on https://www.pissedconsumer.com/aabaco-small-business/RT-F.html, https://www.complaintsboard.com/complaints/yahoo-small-business-c25608.html, and https://www.telapost.com/aabaco-yahoo-host-problem/ (last visited April 11, 2017).

- At this point, I'm just trying to cancel the service and get a refund, which also is not easy. Avoid doing business with Aabaco at all costs.

- I have gone through this every year with Yahoo. They say it is cancelled but bill every year. I have transferred everything over to Go Daddy back in 2014 and I am still being charged by Yahoo. I would like to get a class action law suit going. I have heard of to many people they keep doing this to.

- I'm having the same problem that everyone else is having. Can't access my account or any of my many domains.

- Yahoo small business is a scam … I called to cancel and they cancelled but charged me for the next year, which I dont even have the next year service.

- I just had the same thing happen to me. I canceled the account 6 weeks ago and yet my card was charged.

- OMG … This is insane. I have not received any email for weeks … The business email just quit.

- We lost a lot of business emails, and there is no getting them back.

## CLASS ALLEGATIONS

28.     Plaintiff brings this action on behalf of himself and the members of the proposed Class under Rule 23(a), (b)(2), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure. The proposed Class consists of the following:

> Any person or entity in the United States who was charged for Web Hosting but (1) did not receive such services, or (2) tried to cancel such services according to the Terms and Conditions and could not.

29.     Plaintiff reserves the right to redefine the Class prior to certification after having the opportunity to conduct discovery.

30.     Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, any entity in which Defendants have a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

31.     <u>Numerosity</u>.  Fed. R. Civ. P. 23(a)(1).  The members of the Class are so numerous that joinder is impractical.  The Class consists of hundreds of members, the precise number which is within the knowledge of and can be ascertained only by resort to Defendants' records.

32.     <u>Commonality</u>.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are numerous questions of law and fact common to the Class, which predominate over any questions affecting

only individual members of the Class. Among the questions of law and fact common to the Class are:

    (a)    Whether Defendants entered into contractual relationships with the Class;

    (b)    Whether Defendants breached their contracts with the Class by not providing Web Hosting service to paying customers;

    (c)    Whether Defendants breached their contracts with the Class by not allowing them to cancel their service according to the Terms and Conditions;

    (d)    Whether Defendants were unjustly enriched as a result of their acts complained of herein;

    (e)    Whether Defendants' representations concerning their service constituted false advertising under California law;

    (f)    Whether Defendants engaged in deceptive, unfair, unlawful, and/or fraudulent business practices under California law;

    (g)    Whether Defendants breached their duty of good faith and fair dealing under California law;

    (h)    Whether Class members are entitled to restitution, and in what amount; and

    (i)    Whether Defendants should be enjoined from continuing the practices alleged herein.

33.    <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the members of the Class and, like all members of the Class, Plaintiff paid Defendants for Web Hosting but was not provided with Web Hosting and could not cancel his account according to the Terms and Service.  Accordingly, Plaintiff has no interest antagonistic to the interests of any other member of the Class.

34.    <u>Adequacy</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiff is a representative who will fairly and adequately assert and protect the interests of the Class, and retained counsel experienced in prosecuting class actions.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

35.    <u>Superiority of Class Action</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are in the

millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

36. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

37. <u>Injunctive and Declaratory Relief</u>. Fed. R. Civ. P. 23(b)(2). The conduct of Defendants is generally applicable to the Class as a whole and Plaintiff seeks equitable remedies with respect to the Class as a whole. As such, the systematic policies and practices of Defendants make declaratory or equitable relief with respect to the Class as a whole appropriate.

38. <u>Issue Certification</u>. Fed. R. Civ. P. 23(c)(4). In the alternative, the common questions of law and fact, set forth in Paragraph 33, are appropriate for issue certification on behalf of the proposed Class.

### COUNT I

*Unfair Business Practices Against All Defendants*
(California Business & Professions Code § 17200, *et seq.*
Unfair Competition Law ("UCL"))

39. Plaintiff incorporates and realleges by reference each and every allegation above as if set forth herein in full.

40. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

41. During the relevant time period, Defendants misrepresented and omitted material facts they were obligated to, or should have disclosed, regarding the fact that the Web Hosting would, without notice or reason, cease to be provided to those who paid for the service. Additionally, during the relevant time period, Defendants misrepresented and omitted material

-9-
CLASS ACTION COMPLAINT; Case No. 5:17-cv-2102

facts they were obligated to or should have disclosed regarding the process to cancel the Web Hosting.

42. Such information with respect to the services provided, as well as the method to cancel the service, was material to Plaintiff in that as a reasonable customer he would have considered such information to be a substantial factor in deciding whether to pay Defendants for Web Hosting. Plaintiff and the Class had a reasonable expectation that Defendants' Web Hosting would not be explicitly misrepresented through Defendants' representations and Terms of Conditions.

43. Defendants' practices constitute unfair business practices in violation of the UCL because, among other things, they are immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers and/or any utility of such practices is outweighed by the harm caused to customers. Defendants' practices violate the legislative policies of the underlying statutes alleged herein: namely, protecting customers from unfair business practices and preventing persons from being injured by misleading advertising. Defendants' practices caused substantial injury to Plaintiff and members of the Class and are not outweighed by any benefits, and Plaintiff and members of the Class could not have reasonably avoided their injuries.

44. As a result of Defendants' unfair business practices, Plaintiff has suffered injury in fact and a loss of money or property because he paid for a service which he did not receive and was materially misrepresented, something he would not have done had the true nature of the Web Hosting not been misrepresented or had the material facts been fully disclosed.

45. Pursuant to Business and Professions Code § 17204, Plaintiff and the Class are entitled to an order of this Court enjoining such conduct on the part of Defendants, specifically, (1) prohibiting Defendants from charging for Web Hosting when they do not provide it; and (2) requiring Defendants to cancel the service for customers who have requested such cancellation. Plaintiff and the Class are also entitled to any other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Defendants' ill-gotten gains, including the monies Defendants received or saved as a result of its wrongful acts

and practices detailed herein, and restoring to any person in interest such monies paid for Defendants' Web Hosting by ordering the payment of full restitution plus interest.

## COUNT II

*Fraudulent Business Practices Against All Defendants*
(California Business & Professions Code § 17200, *et seq.*)

46. Plaintiff incorporates and realleges by reference each and every allegation above as if set forth herein in full.

47. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

48. Defendants have misrepresented what services will be provided to paying customers and the process for how to cancel such services. These misrepresentations, as complained of herein, are misleading and false.

49. Throughout the relevant time period, Defendants omitted material facts they were obligated to disclose regarding what services would be provided to paying customers, namely that Web Hosting services could be discontinued for no reason and without notice, and that the Web Hosting could not be cancelled according to the Terms and Conditions. The facts concealed or not disclosed by Defendants with respect to Web Hosting at issue are material in that Plaintiff would have considered these facts to be a substantial factor in deciding whether to purchase and use Defendants' service.

50. Plaintiff and the Class members had a reasonable expectation that the Web Hosting was not misrepresented as to what a paying customer is provided with, and how an existing customer cancels the service. A large number of complaints posted on various online communities and message boards substantiate these expectations and assumptions.

51. Such acts and practices of Defendants, as described herein, constitute "fraudulent" business practices under California Business and Professions Code § 17200, *et seq.* in that such conduct was and is likely to deceive reasonable customers into believing Defendants' Web Hosting included Web Hosting to paying customers and that the Terms and Services included an accurate method for how to cancel the Web Hosting.

52. As a result of Defendants' fraudulent business practices, Plaintiff has suffered injury in fact and a loss of money or property because he paid for a service which he did not receive and was materially misrepresented, something he would not have done had the true nature of the Web Hosting not been misrepresented or had the material facts been fully disclosed.

53. Pursuant to Business and Professions Code § 17204, Plaintiff and the Class are entitled to an order of this Court enjoining such conduct on the part of Defendants, specifically, (1) prohibiting Defendants from charging for Web Hosting when they do not provide it; and (2) requiring Defendants to cancel the service for customers who have requested such cancellation. Plaintiff and the Class are also entitled to any other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Defendants' ill-gotten gains, including the monies Defendants received or saved as a result of its wrongful acts and practices detailed herein, and restoring to any person in interest such monies paid for Defendants' Web Hosting by ordering the payment of full restitution plus interest.

## COUNT III

*Unlawful Business Practices Against All Defendants*
(California Business & Professions Code § 17200, *et seq.*)

54. Plaintiff incorporates and realleges by reference each and every allegation above as if set forth herein in full.

55. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

56. Defendants' deceptive and misleading business practices and acts, as described herein, breached and continue to breach the contract entered into between Defendants and the Class—money for Web Hosting. Defendants' conduct also violated and continues to violate California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, by representing that paying customers would receive Web Hosting and could cancel their accounts according to the Terms and Conditions, when this is not true.

57. Plaintiff reserves the right to identify other violations of law as the facts develop.

58. As a result of Defendants' unlawful business practices, Plaintiff has suffered injury in fact and a loss of money or property because he paid for a service which he did not receive and was materially misrepresented, something he would not have done had the true nature of the Web Hosting not been misrepresented or had the material facts been fully disclosed.

59. Pursuant to Business and Professions Code § 17204, Plaintiff and the Class are entitled to an order of this Court enjoining such conduct on the part of Defendants, specifically, (1) prohibiting Defendants from charging for Web Hosting when they do not provide it; and (2) requiring Defendants to cancel the service for customers who have requested such cancellation. Plaintiff and the Class are also entitled to any other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Defendants' ill-gotten gains, including the monies Defendants received or saved as a result of its wrongful acts and practices detailed herein, and restoring to any person in interest such monies paid for Defendants' Web Hosting by ordering the payment of full restitution plus interest.

## COUNT IV

*Violation of the California False Advertising Law Against All Defendants*
(California Business & Professions Code § 17500, *et seq.*)

60. Plaintiff incorporates and realleges by reference each and every allegation above as if set forth herein in full.

61. California's False Advertising Law ("FAL") prohibits unfair, deceptive, untrue, or misleading advertising, including false statements as to worth, value, and former price.

62. The FAL makes it unlawful for a business to disseminate any statement which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

63. Defendants' practice of representing to the public, through its website and Terms of Service, that Web Hosting will be provided to paying customers, and that existing customers can cancel their accounts according to the Terms of Service, is an unfair, deceptive or misleading advertising practice because it gave the false impression that Web Hosting would be

provided to paying customers, and that existing customers can cancel their accounts according to the Terms of Service.

64. On each day throughout the relevant period, Defendants, with the intent to induce members of the public to purchase their Web Hosting, made or caused to be made each of the untrue or misleading statements, claims, or representations described herein.

65. Defendants knew, or by the exercise of reasonable care should have known, that these claims were untrue, deceptive, or misleading.

66. When Defendants made or caused to be made the untrue or misleading claims, statements, or misrepresentations described herein to customers in California, Defendants failed to adequately disclose the facts pleaded herein.  Plaintiff requests that this Court cause Defendants to restore this money to Plaintiff and all other respective members of the Class, and to enjoin such conduct on the part of Defendants, specifically, (1) prohibiting Defendants from charging for Web Hosting when they do not provide it; and (2) requiring Defendants to cancel the service for customers who have requested such cancellation.  Plaintiff and the Class are also entitled to any other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Defendants' ill-gotten gains, including the monies Defendants received or saved as a result of its wrongful acts and practices detailed herein, and restoring to any person in interest such monies paid for Defendants' Web Hosting by ordering the payment of full restitution plus interest.

## COUNT VI

### *Breach of Contract Against All Defendants*

67. Plaintiff incorporates and realleges by reference each and every allegation above as if set forth herein in full.

68. Defendants offered to provide the Web Hosting, including web hosting, as long as Plaintiff and the Class paid the applicable monthly or yearly fees on time.

69. Plaintiff entered into a contract with Defendants when he purchased their Web Hosting for web hosting.

70. At all relevant times, Plaintiff has automatically paid the applicable monthly fee, at least up through the filing of this Action.

71. Defendants owed duties and obligations to Plaintiff and members of the Class under the contracts, including the duty to provide Web Hosting and the duty to allow customers to cancel their service according to the Terms and Conditions.

72. Defendants materially breached Plaintiff's contract when Plaintiff's Web Hosting was discontinued in October of 2016, without notice or reason, as Plaintiff continued to automatically pay the monthly fee. Defendants further materially breached Plaintiff's contract by not allowing Plaintiff to cancel his service according to the Terms and Conditions.

73. Defendants were put on notice of the breach, at least once a month from the time of the breach, by Plaintiff through his phone calls and correspondence to customer service representatives.

74. As a result of Defendants' breach, Plaintiff and the Class have been injured and harmed by their failure to provide Web Hosting to paying customers, and by their failure to cancel the service to those who requested such cancellation according to the Terms and Service. As a direct and proximate result of Defendants' breach, Plaintiff and the Class have suffered damages; they have spent time and/or money, and will continue to spend time and/or money in the future paying for their deactivated Web Hosting and spending time and/or money in trying to contact Defendants' customer service representatives in order to reactivate the Web Hosting or cancel their service. Plaintiff and the Class are entitled to compensation for those reasonable efforts to protect their interests, as well as for all detriment proximately caused by Defendants' breach, or in the alternative, for nominal damages and/or restitution.

## COUNT VII

*Breach of the Duty of Good Faith and Fair Dealing Against All Defendants*

75. Plaintiff incorporates and realleges by reference each and every allegation above as if fully set forth herein.

76. Plaintiff and the Class purchased Defendants' Web Hosting in the reasonable expectation that the service would include web hosting as long as they continued to pay the

appropriate fees, and that the service could be cancelled according to the Terms and Conditions, and that Defendants would take all reasonable steps to ensure that these representations were honored and accurate.

77. Plaintiff and the Class also purchased Defendants' Web Hosting with the reasonable expectation that Defendants would deal with them fairly, equitably, in good faith, and in full conformity with the express and implied terms of the Web Hosting. This expectation was brought about and intended by Defendants as a result of the contractual language and by the express representations of the respective employees, agents, and representatives of Defendants.

78. Defendants have materially breached their duty of good faith and fair dealing owed to Plaintiff and the Class in at least the following respects:

(a) By failing to offer Web Hosting to paying customers; and

(b) By failing to allow customers to cancel the service according to the Terms and Conditions.

79. As a result of Defendants' breach, Plaintiff and the Class have been injured and harmed by their failure to provide Web Hosting to paying customers, and by their failure to cancel the service to those who requested such cancellation according to the Terms and Service. As a direct and proximate result of Defendants' breach, Plaintiff and the Class have suffered damages; they have spent time and/or money, will continue to spend time and/or money in the future paying for their deactivated Web Hosting, and spending time and/or money in trying to contact Defendants' customer service representatives in order to reactivate the Web Hosting or cancel their service. Plaintiff and the Class are entitled to compensation for those reasonable efforts to protect their interests, as well as for all detriment proximately caused by Defendants' breach, or in the alternative, for nominal damages and/or restitution.

## COUNT VIII

*Unjust Enrichment Against All Defendants*

80. Plaintiff incorporates and realleges by reference each and every allegation above as if fully set forth herein.

81. Plaintiff and Class members conferred benefits on Defendants by paying for Web Hosting.

82. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Web Hosting because Defendants did not provide the benefits due under the terms of the service. Retention of those monies under these circumstances is unjust and inequitable because Defendants misrepresented that the Web Hosting would be provided if the annual or monthly membership dues were paid, and also that customers could cancel the service according to the Terms and Conditions. These misrepresentations caused injuries to Plaintiff and Class members because they would not have purchased the Web Hosting if the true facts had been known.

83. Because Defendants' retention of the benefits conferred on them by Plaintiff and the Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class members for their unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class demand judgment against Defendants as follows:

A. An order certifying that this Action may be maintained as a class action, that Plaintiff be appointed Class Representative and Plaintiff's counsel be appointed Class Counsel;

B. A judgment awarding Plaintiff and all members of the Class damages as alleged above incurred by Plaintiff and Class members as a result of Defendants' unlawful, deceptive, unfair, and fraudulent business and trade practices described herein;

C. A judgment awarding Plaintiff and all members of the Class restitution or other equitable relief, including, without limitation, disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the Class as a result of their unlawful, unfair, and fraudulent business practices described herein;

D. An order enjoining Defendants from continuing to violate the laws as described herein;

E. A judgment awarding Plaintiff the costs of suit, including reasonable attorneys' fees, and pre and post-judgment interest; and

F.     Such other and further relief as may be deemed necessary or appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 14, 2017

**LEVI & KORSINSKY LLP**

By: /s/ *Rosemary M. Rivas*
Rosemary M. Rivas

Quentin A. Roberts
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294
Email: rrivas@zlk.com
Email: qroberts@zlk.com

*Attorneys for Individual and
Representative Plaintiff Ronald Meyer*