United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RONALD MEYER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>AABACO SMALL BUSINESS, LLC, et al.,<br><br>    Defendants. | Case No. 5:17-cv-02102-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

## I. INTRODUCTION

Plaintiffs Ronald Meyer ("Meyer") and Luz Betzabeth Bedoya-Apolo ("Apolo") initiated this nationwide putative class action suit against Defendants Aabaco Small Business, LLC ("Aabaco") and Yahoo! Inc. ("Yahoo!") seeking redress for Defendants' alleged failure to provide web hosting services to customers, failure to provide notice of termination, cancellation or suspension, and failure to cancel services in accordance with Defendants' Terms of Service. Federal subject matter jurisdiction is predicated on the Class Action Fairness Act of 2005. Presently before the Court is Defendants' motion to dismiss the First Amended Complaint pursuant to Fed.R.Civ.P.12(b)(6). Defendants contend that the alleged internet service disruptions with the website hosting services ("Web Hosting") they were providing to Plaintiffs do not amount to a violation of California's Unfair Competition Law ("UCL") or the False Advertising Law ("FAL"), nor constitute a breach of the Terms of Service contract governing the Web Hosting. Defendants further contend that the unjust enrichment claim fails because the parties' relationship is governed by the Terms of Service. For the reasons set forth below, Defendants'

motion is granted in part and denied in part.

## II. BACKGROUND[1]

Defendant Yahoo! is a technology company that offers online services to millions of people. First Amended Complaint ("FAC") at ¶2. Yahoo!'s wholly-owned subsidiary, Aabaco, offers a range of small business services, including Web Hosting. Id. Customers pay monthly or annual fees to Defendants to receive Web Hosting services. Id. at ¶3. Defendants' Web Hosting includes website building tools and storage space, business emails attached to the website and the ability to market or advertise through websites. Id. at ¶22. Defendants promised 24-hour phone and email support. Id. Plaintiffs acknowledge that Defendants' Terms of Service govern the relationships between Defendants and customers who pay for Web Hosting. Id. at ¶4.

Plaintiff Meyer, a resident and citizen of Michigan, signed up for Defendants' Web Hosting sometime between 1998 and 2000 to have and maintain a photography related website. Id. at ¶¶8, 26. Within his website, Meyer also paid for and maintained two separate URLs for two children's books he wrote and illustrated. Id. at ¶26. Meyer paid $9.95 a month for Defendants to host his website and to provide him with email accounts tied to his website. Id.

Meyer received and used Web Hosting until October of 2016 when Defendants "abruptly and without reason or notice stopped providing the Web Hosting, although Defendants continued to charge him monthly through March of 2017. Id. at ¶8. Meyer alleges that as a result of the Web Hosting disruption, potential buyers of his books and photography could no longer visit his URLs or email him. Id. at ¶27. Meyer alleges on information and belief that Defendants only stopped charging him because he filed the instant action on April 14, 2017. Id.

After Meyer became aware that his services were "cancelled," he called and emailed Defendants multiple times, asking them to reactivate his Web Hosting or in the alternative, to return all data that made up the site, including the domain name, and to cancel Web Hosting. Id.

---

[1] The Background is a summary of the allegations in the First Amended Complaint. All well-pleaded facts are accepted as true for purposes of the instant motion.

Case No.: 5:17-cv-02102-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

2

at ¶9. According to Meyer, "[n]ot a single live customer service representative could help him in either reactivating his website and email accounts, or cancelling his services according to the Terms of Service." Id. at ¶32. Meyer asked for a refund and was told he would have to talk to the accounting department; however, he was not given the accounting department phone number. Id. at ¶9.

Meyer was never informed that Defendants may suspend or terminate the Web Hosting services with no notice or reason while continuing to bill and collect payment. Id. at ¶28. Meyer also asserts that Defendants never asked him to verify his domain name information as part of compliance with the Internet Corporation for Assigned Names and Numbers ("ICANN") or Internet Names Worldwide ("INWW"). Id. at ¶29.

Plaintiff Apolo, a resident and citizen of California, started paying for Defendants' Web Hosting services in approximately 2011 when she became the owner and operator of the Apolo Driving & Traffic School in Van Nuys, California. Id. at ¶¶11, 35. Apolo used Defendants' services to maintain a website to facilitate and advertise her business. Id. The annual fee for Defendants' services was approximately $140.00. Id. at ¶35. In approximately March of 2017, Defendants "abruptly and without reason or notice stopped providing Plaintiff Apolo with the Web Hosting that was paid in full through August of 2017." Id. at ¶11. Apolo was never informed that Defendants may terminate the Web Hosting services without notice or reason. Id. at ¶40. Apolo alleges on information and belief that Defendants suspended her Web Hosting for approximately one week, possibly longer. Id. at ¶11.

When Apolo's employee contacted Defendants regarding the disruption in service, Defendants' customer representative allegedly said "it was done with all accounts to make sure the billing address was correct." Id. at ¶12. Apolo contends that the stated reason for the disruption in service was suspicious because nothing had changed with her business or billing information, and moreover she had paid for a full year of service in advance. Id. Apolo alleges that the disruption in service damaged her business and jeopardized her license to operate a driving school with the

Department of Motor Vehicles. Id.

Plaintiffs seek to represent a class consisting of: "Any person or entity in the United States with a Web Hosting Account with Defendant and who (1) was charged for, but [ ] was not provided, with Web Hosting services; or (2) asked for cancellation of Web Hosting services pursuant to the Terms of Service but [was] continued to be billed by Defendants." Id. at ¶51. Plaintiffs assert claims for (1) unfair business practices in violation of the UCL; (2) fraudulent business practices in violation of the UCL; (3) unlawful business practices in violation of the UCL; (4) violation of the FAL; (5) breach of contract; and (6) unjust enrichment.

### III. STANDARDS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of claims alleged in the complaint. Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014) (providing the court must "draw all reasonable inferences in favor of the nonmoving party" for a Rule 12(b)(6) motion). Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

Consumer-protection claims that sound in fraud, as Plaintiffs' claims do, are subject to the heightened pleading requirements of Fed.R.Civ.P. 9(b). Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir. 2003); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009); In re Apple and AT&T iPad Unlimited Data Plan Litigation, 802 F.Supp.2d, 1070, 1075 (N.D. Cal. 2011) (Rule 9(b) applies to claims under the UCL and FAL). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud. . . ." Fed.R.Civ.P. 9(b). The circumstances constituting the fraud must be "specific enough to give defendants notice of the

Case No.: 5:17-cv-02102-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
4

particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Therefore, a party alleging fraud must set forth "the who, what, when, where, and how" of the misconduct. Vess, 317 F.3d at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).

## IV. DISCUSSION

### A. UCL and FAL Claims

Defendants seek dismissal of the UCL and FAL claims, asserting that Plaintiffs have failed to plead fraud with the requisite particularity.

California Business & Professions Code §17200 defines unfair competition as any "unlawful, unfair or fraudulent business act or practice." "Unlawful" practices are forbidden by law. Saunders v. Super. Ct., 27 Cal.App.4th 832, 838 (1994). "Unfair" practices constitute "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163 (1999). The "fraudulent" prong requires a showing of actual or potential deception to some members of the public, or harm to the public interest. See Id. at 180. A plaintiff may base a UCL claim on an alleged omission, "[but] to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact that the defendant was obliged to disclose." Sud v. Costco Wholesale Corp., 229 F.Supp.3d 1075, 1085 (N.D. Cal. 2017) (quoting Daugherty v. Am. Honda Motor Co., 144 Cal.App.4th 824, 835 (2006)).

The FAL proscribes the making or disseminating of any statement which is untrue or misleading. Cal. Bus. & Prof. Code §17500. By its terms, the FAL does not encompass omissions without an alleged misstatement. See Dana v. Hershey Company, 180 F.Supp.3d 652, 668 (N.D. Cal. 2016); Norcia v. Samsung Telecommunications America, LLC, No. 14-582 JD,

1  2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015). Therefore, to state a FAL claim premised on an omission, the plaintiff must plead that the alleged omission was contrary to a statement made by the defendant. See Hodson v. Mars, Inc., 162 F.Supp.3d 1016, 1023 (N.D. Cal. 2016) ("a plaintiff may state a claim under the FAL if the defendant actually made a statement, but omitted information that undercuts the veracity of the statement"). For both a UCL and FAL fraud claim, the plaintiff must plead particularized facts demonstrating a causal connection or reliance on the alleged misrepresentation. Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 326 (2011).

### 1. UCL and FAL Fraud Theory

Meyer alleges that he was never informed that Defendants may suspend or terminate the Web Hosting services with no notice or reason while continuing to bill and collect payment. Apolo similarly alleges that she was never informed that Defendants may terminate the Web Hosting services without notice or reason. Plaintiffs' claims are deficient insofar as Plaintiffs fail to identify any statement by Defendants that would have caused them or other consumers to reasonably believe that charges would not be assessed during periods of service interruption. Instead, the Terms of Service state clearly and unambiguously in pertinent part: "The Company reserves the right at any time and from time to time to modify or discontinue, temporarily or permanently, the Services (or any part thereof) with or without notice." FAC, Ex. A at p. 25, §1(e). The Terms of Service also state: "You agree that the Company shall not be liable to You or to any third party for any modification, suspension, or discontinuance of any Service." Id. Further, the Terms of Service provide that: "The Company does not warrant that (i) the services will meet your requirements or be uninterrupted, timely, secure or error-free, (ii) the quality of the services will meet your expectations, and [iii] any error in the services will be corrected[.]" Id. at p.36, §12(d). The Terms of Service thus expressly disclose the possibility that services may be interrupted without notice, that services would not be error-free, and that Defendants will not be liable for service interruptions. Accordingly, Plaintiffs' alleged fraud claim is not actionable as a matter of law. See In re Sony Gaming Networks & Customer Data Sec. Breach Litig., 996

Case No.: 5:17-cv-02102-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

6

F.Supp.2d 942, 989-990 (S.D. Cal. 2014) ("[n]o reasonable consumer would believe that Sony's representations regarding the network were meant to promise continued and uninterrupted access to Sony Only Services and/or that Sony was providing uninterrupted access to the" Play Station Network); see also Porras v. StubHub, Inc., No. 12-1225 MMC, 2012 WL 3835073, at *5-6 (N.D. Cal. Sept. 4, 2012) (StubHub's use of "guarantee," "100% confidence," "authentic," and "valid" did not support UCL and FAL claims where StubHub discloses possibility of invalid tickets). In light of the disclosures made in the Terms of Service, Plaintiffs cannot establish the requisite causal connection between Defendants' alleged fraudulent conduct and Plaintiffs' injuries. Plaintiffs' UCL fraud claim and FAL claim are dismissed with prejudice.

### 2. "Unlawful" Conduct

Plaintiffs' UCL claim under the "unlawful" prong is based upon an alleged violation of the FAL and breach of contract. For the reasons discussed above, Plaintiffs' FAL claim fails as a matter of law. It follows that Plaintiffs' "unlawful" prong claim fails to the extent it is based upon a violation of the FAL. Further, Plaintiffs' breach of contract claim cannot support a UCL claim. See Shroyer v. New Cingular Wireless Services, Inc., 622 F.3d 1035, 1043-44 (9th Cir. 2010 ) ("a common law violation such as breach of contract is insufficient" unless conduct is independently unlawful, unfair or fraudulent). Plaintiffs' UCL claim under the "unlawful" prong fails as a matter of law and is accordingly dismissed with prejudice.

### 3. "Unfair" Conduct

Plaintiffs allege that Defendant's business practices with respect to cancellation are unfair in three respects. FAC, ¶66.[2] First, Plaintiffs allege that Defendants do not disclose, or inadequately disclose, a customer service phone number on their website that can be used to cancel an existing customer's Web Hosting. Id. Second, Plaintiffs allege that Defendants have an

---

[2] The "unfair" business practice claim is also based upon the alleged failure to disclose that Defendants could terminate, suspend, cancel or otherwise not provide Web services without notice and continue to charge for services. FAC at ¶65. The allegation is insufficient to state a claim for the reasons discussed in the context of Plaintiffs' UCL fraud claim and FAL claim.

Case No.: 5:17-cv-02102-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
7

outdated verification process requiring old information that makes it difficult for customers to verify their identity. Id. Third, Plaintiffs allege that Defendants "do not timely process cancellation requests for a whole host of reasons, including by failing to provide an adequate number of properly trained customer service representatives." Id.

The UCL does not define the term "unfair" and the California Supreme Court has not established a definitive test to determine whether a business practices is unfair. Wahl v. Yahoo! Inc., No. 17-2745 BLF, 2017 WL 4098884, at *2 (N.D. Cal. Sept. 15, 2017). Nevertheless, three separate tests have emerged from the California Courts of Appeal that provide guidance on the issue. The first test requires that the public policy underlying the claim "must be tethered to specific constitutional, statutory or regulatory provisions." Drum, supra, at 257. Under the second test, courts analyze whether the alleged business practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." Wahl, supra, at *2 (quoting Drum, supra, at 257). The third test requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." Drum, supra, at 257.

Plaintiffs' UCL claim under the "unfair" prong is inadequately pled. Plaintiffs have not pled the who, what, when, where, and how of the alleged misconduct. For example, Meyer alleges that he was unable to cancel his Web Hosting, but does not plead with particularity facts describing his interaction(s) with Defendants' customer service representative(s). As another example, Plaintiffs allege that Defendants have an outdated verification process, but do not include particularized facts regarding the outdated verification process. In response to the motion to dismiss, Plaintiffs argue that existing customers are unable to confirm their identity with Defendants even if they offer to provide current banking information to establish their identity and the payments being made for the Web Hosting services. This allegation, however, is not included

Case No.: 5:17-cv-02102-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

8

in the operative complaint.

Nor are Plaintiffs' allegations sufficient to satisfy any of the three tests for an "unfair" business practice. Plaintiffs do not tether their claim to any specific constitutional, statutory or regulatory provision. Instead, Plaintiffs allege in conclusory language that Defendants' practices "violate the legislative policies of the underlying statutes alleged herein: namely, protecting customers from unfair business practices and preventing persons from being injured by misleading advertising." FAC at ¶ 67. With respect to the second test, Plaintiffs' allegations suggest that their interactions with Defendants' customer service agents and Defendants' verification process may have been inconvenient, frustrating and time consuming. There are insufficient facts, however, to establish that Defendants' business practices rise to the level of immoral, unethical, oppressive, unscrupulous, or substantially injurious practices. Plaintiffs' allegations are also insufficient to satisfy the third test. Among other things, Plaintiffs' allegations fail to establish that Defendants' customer service representatives and the outdated verification process caused Plaintiffs "substantial" injuries. The UCL claim under the "unfair" prong is dismissed with leave to amend.

B. Breach of Contract

Plaintiffs allege that pursuant to the Terms of Service, Defendants had a contractual duty to provide Web Hosting in exchange for payment (§4(c)), and that Defendants breached that duty by terminating Plaintiffs' Web Hosting without notice (§5(c)). FAC at ¶97. Plaintiffs allege that they have been injured and harmed by Defendants' failure to provide Web Hosting to paying customers without notice while continuing to charge for services. Id. at ¶99.

Defendants seek dismissal of the breach of contract claim, arguing that the Terms of Service do not require reimbursement during temporary interruptions of service or notification prior to a disruption in service. With respect to reimbursement, Defendants argue that section 4(c) states only that "You will be charged the applicable fees for the Service(s) You select," and makes no representations regarding reimbursement. With respect to notice prior to termination,

Defendants argue that section 5(c) of the Terms of Service applies only when there is a "Termination by the Company," and Plaintiffs have not alleged that their accounts were permanently terminated by Defendants.

Defendants' arguments are persuasive. Section 4(c) of the Terms of Service does not impose a contractual duty to reimburse fees incurred during temporary disruptions in service. The notice provision in Section 5(c) is also clear. Section 5(c), entitled "Termination by the Company," provides that Defendants "may terminate this Agreement or any of the Services at any time, for any reason, upon notice to You." See FAC, Exhibit A, p. 27. Plaintiffs do not allege that Defendants permanently terminated the Agreement or services. Rather, Plaintiffs allege that they experienced disruptions in service, which they repeatedly contend should be characterized as terminations. Although the disruptions in service may have been prolonged, especially for Meyer (six months), the disruptions were nevertheless disruptions, and cannot reasonably be characterized as terminations in service. Plaintiffs' breach of contract claim is accordingly dismissed.

C.  Unjust Enrichment

Defendants contend that the unjust enrichment claim fails as a matter of law because an enforceable written contract exists between the parties. The Court agrees. See Mosier v. Stonefield Josephson, Inc., 815 F.3d 1161, 1172 (9th Cir. 2016) (quasi-contract action for unjust enrichment does not lie where express binding agreements exist and define the parties' rights); Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996) (unjust enrichment "does not lie when an enforceable, binding agreement exists defining the rights of the parties."); Durell v. Sharp Healthcare, 183 Cal.App.4th 1350, 1370 (2010) ("An unjust enrichment theory is inapplicable because Durell alleges the parties entered into express contracts."). Nevertheless, Plaintiffs are entitled to plead claims in the alternative. Clear Channel Outdoor, Inc. v. Bently Holdings Cal. L.P., No. 11-2573 EMC, 2011 WL 6099394, at *9 (N.D. Cal. Dec. 7, 2011) ("[E]ven though a plaintiff may not ultimately prevail under both unjust enrichment and

breach of contract, it may plead both in the alternative.")

## V.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED as to Count I ("unfair" business practices) with leave to amend, and GRANTED with prejudice as to Counts II ("fraudulent" business practices), III ("unlawful" business practices), IV (FAL), and VI (breach of contract), and DENIED as to Count VII (unjust enrichment).[3]  Plaintiff shall file and serve an amended complaint consistent with this Order no later than January 19, 2018.

**IT IS SO ORDERED.**

Dated:   January 5, 2018

_____
EDWARD J. DAVILA
United States District Judge

---

[3] The complaint does not include a "Count V."